**FILED**

**JUN 19 2012**

Clerk, U.S. District and
Bankruptcy Courts

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MOSHE MOSBACHER                           *
400 E Randolph St, Apt 3302              *
Chicago, Illinois 60601                  *
                                         *
            Plaintiff,                   *
                                         *
      v.                                 *        Civil Action No.:
                                         *
IT.COM, INC.                             *
1100 Connecticut Avenue, Suite 310      *
Washington, DC 20036                     *

Case: 1:12-cv-01014
Assigned To : Walton, Reggie B.
Assign. Date : 6/19/2012
Description: Labor/ERISA

      Serve:  Mark A. Cordover
              2610 Normanstone Lane NW
              Washington, DC 20008

And                                      *
                                         *
MARK A. CORDOVER                         *
2610 Normanstone Lane NW                 *
Washington, DC 20008                     *
                                         *
            Defendants.                  *
*************************************************************************

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, Moshe Mosbacher ("Plaintiff"), by and through undersigned

counsel, and hereby submits his Complaint against IT.Com, Inc. ("IT.Com") and Mark A.

Cordover ("Cordover") (together, "Defendants"), to recover damages for unpaid overtime pay

under the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.*

("FLSA"); for unpaid overtime pay under the D.C. Minimum Wage Act Revision Act of 1992,

D.C. Code §§ 32-1001 *et seq.* ("DCMWA"), for unpaid wages and commissions under the D.C.

Wage Payment and Wage Collection Act, D.C. Code §§ 32-1301 *et seq.* ("DCWPA"), and for

other damages as set forth below.

1

RECEIVED
Mail Room

JUN 19 2012

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

## PARTIES AND JURISDICTION

1.      Plaintiff is an adult resident and domiciliary of Chicago, Illinois.

2.      IT.Com is a corporation formed under the laws of the District of Columbia and maintains its principal office in Washington, D.C.  Cordover is an adult resident and domiciliary of the District of Columbia.

3.      At all times relevant, Cordover was the CEO and primary owner of IT.Com; had the power to hire, fire, suspend, and otherwise discipline Plaintiff; supervised Plaintiff's work duties to ensure Plaintiff's work was of sufficient quality; set and controlled Plaintiff's work schedule; set and determined Plaintiff's rate and method of pay; maintained all employment records relating to Plaintiff or caused such records to be maintained; and controlled, and was in charge of, the day-to-day operations of IT.Com.  As such, Cordover and IT.Com were Plaintiff's "employers" for purposes of the FLSA, DCMWA, and DCWPA.

4.      At all times relevant, Defendants were engaged in commerce or in the production of goods for commerce within the meaning of § 3(s)(1) of the FLSA (29 U.S.C. § 203(s)(1)).

5.      At all times relevant, Plaintiff was engaged in commerce or the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

6.      This Court has jurisdiction over Defendants pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b), and 28 U.S.C. § 1337, relating to "any civil action or proceeding arising under any Act of Congress regulating commerce."

7.      Subject matter jurisdiction is invoked both under 28 U.S.C. § 1331 (Federal Question) and 28 U.S.C. §1332 (Diversity) as there is complete diversity between the parties and the amount in question in this matter exceeds $75,000.00, exclusive of interest and costs.  This Court also has supplemental jurisdiction over Plaintiff's state and common law claims.

8.     Venue is proper pursuant to 28 U.S.C. § 1391.

## FACTS

9.     On about May 28, 2009, Plaintiff started a company 2M LLC, incorporated in the District of Columbia.  2M, LLC was created by Plaintiff to offer fixed price document review by licensing software and hiring staffing companies to provide the contract attorney reviewers.

10.     On about June 27, 2011, Plaintiff and IT.Com's CEO, Cordover, had lunch together at the Mayflower Hotel in Washington, DC.  At this lunch meeting, IT.Com, by and through Cordover, convinced Plaintiff to abandon his independent efforts on behalf of 2M, LLC, and join IT.Com as an employee.

11.     A substantial factor in IT.Com's convincing Plaintiff to enter IT.Com's employ was a clear promise by IT.Com, by and through Cordover, that it would create a spinoff company dedicated to fixed price review in which Plaintiff would receive an equity interest.

12.     On or about June 28, 2009, Cordover sent an email to Plaintiff summarizing the terms of Plaintiff's employment with IT.Com including promised stock options, vesting over three years, but fully vesting on change of control, for 3% of the total outstanding shares of IT.Com, with the option having a strike price which values the company at $20,000,000.00.

13.     Shortly thereafter, IT.Com and Plaintiff agreed to a strike price reduced to $15,000,000.00.

14.     At this time, Cordover advised Plaintiff the stock option plan promised to Plaintiff was in the process of being reduced to a written document by Gary Shaffer, Esquire, IT.Com's attorney.

15.     In about August 2009, after Plaintiff's entering IT.Com's employ, Plaintiff and IT.Com further confirmed that as a part of Plaintiff's compensation package, Plaintiff would have the right is to run the services business spinoff, which would initially take the form of a fixed price review offering and that Plaintiff was entitled to the right to a 35% equity interest in IT.Com's service business spinoff.

16.     In about December 2009, IT.Com hired Sundara Chintaluri as Chief Operating Officer ("COO"). Thereafter, IT.Com acted intentionally to refuse to memorialize the previous agreements between IT.Com and Plaintiff regarding equity rights and stock options notwithstanding diligent efforts by Plaintiff to have a written document confirming Plaintiff's stock and equity rights.

17.     On about April 1, 2010, Plaintiff and IT.Com, with the assistance of Mark L. Lezell, Esquire, reduce Plaintiff's compensation, equity, and stock option rights to a summarizing written word document. This written agreement included the 3% stock option for Plaintiff, as well as Plaintiff's right to the 35% equity in a spinoff. At that time, the spinoff was envisioned for 2010.

18.     On about April 7, 2010, Cordover forwarded the terms summary document to Attorney Lezell to be reduced into a formalized document, a task Attorney Lezell never completed, on information and belief, at the behest of Cordover.

19.     Following the agreement between the parties with Attorney Lezell, Plaintiff learned that many of IT.Com's potential customers were interested in 'data only' versus 'fixed price review' services. For such services, IT.Com and Plaintiff agreed that Plaintiff was entitled to a 10% commission on such data sales.

4

20.     On about July 26, 2010, IT.Com's employee stock option plan was reduced to a final writing. Upon learning of the plan, Plaintiff observed he was not included as a stock option recipient.

21.     At this time, Plaintiff inquired with Cordover why he was not included in the plan as Plaintiff's right to receive stock options was a material promise upon which Plaintiff relied in entering and continuing in IT.Com's employ. Cordover's reply to Plaintiff was he decided not to give Plaintiff the stock options.

22.     Early in 2011, Plaintiff and Cordover agreed the spinoff in which Plaintiff would hold a 35% equity share would also include the 'data only' eDiscovery services.

23.     On about July 1, 2011, Plaintiff again implored Cordover to reduce Plaintiff's equity rights in the spinoff to a formal writing. At that time, Cordover promised to have Gary Sheffer, Esquire (Cordover's attorney) reduce the promise to writing, but Cordover did not follow through with this promise either, on information and belief, at the behest of Cordover.

24.     On about September 20, 2011, in response to Plaintiff's insistence on putting the 35% equity promise in writing, Cordover wrote an email to Plaintiff confirming that Plaintiff's equity rights were in fact "a deal" and therein articulated and reconfirmed Plaintiff's equity rights.

25.     While performing work duties in IT.Com's employ, the majority of Plaintiff's actual duties were inside sales and related activities, which largely entailed identifying potential clients, persuading potential clients to engage IT.Com for specific projects, taking orders for work from IT.Com's clients and relaying IT.Com's client's requests to IT.Com.

26.     Additionally, Plaintiff's employment duties required Plaintiff to perform occasional administrative related tasks, including creating job order tickets, attending meetings, and performing other odd tasks at IT.Com's request.

27.     A much smaller percentage of Plaintiff's employment duties included assisting clients with exporting of data in agreed upon formats.  These job duties represented about five percent (5%) of Plaintiff's work time and, by IT.Com's own admission, were outside the general scope of Plaintiff's job description, and as such, Plaintiff was separately compensated for this work at a rate of $150.00 per hour.

29.     Plaintiff rarely if ever engaged in advertising, marketing, or other related activities to promote business.

30.     IT.Com focused its efforts to ensure that Plaintiff's employment related job duties and efforts were restricted to inside sales and inside sales-related activities.

31.     At all times while Plaintiff was employed by IT.Com, IT.Com's COO was responsible for all operational tasks for IT.Com, including infrastructure, data intake and export, service delivery, and software development.

32.     Subsequent to the hiring of Sundara Chintaluri as COO in December 2009, at no time did Plaintiff's primary duty relate to the management of IT.Com.  General business operations were within the purview of IT.Com's COO, CEO, and the office administrator.

33.     At no time did Plaintiff direct the work of any of IT.Com's other employees.

34.     At no time did Plaintiff have authority to hire or fire any other employee of IT.Com, and Plaintiff's recommendations as to hiring and were not given any significant weight by IT.Com in hiring or firing decisions.

35.     Plaintiff possesses no specialized training in any area related to his job duties with IT.Com and, in fact, holds no secondary degree, specialized degree, or professional degree.

36.     In addition to the stock options and equity rights guaranteed by Defendants as set forth above, Plaintiff and Defendants entered into a compensation agreement at the rate and method as follows:  $100,000.00 annual base salary, plus commission equal to 10% of gross profit on all traditional IT.com "data-only" sales, plus commission equal to 35% of gross profit exceeding $1,000.00 per gigabyte on "fixed price per document" projects, plus $150.00 per hour on all "production-related" work.

37.     Defendants generally (with certain exceptions) paid Plaintiff his salary, commissions, and production work monthly.

38.     On about January 13, 2012, Defendants terminated Plaintiff's employment.

39.     At the time when Defendants terminated Plaintiff's employment, Defendants repudiated Plaintiff's rights to an equity interest in IT.Com's spinoff, reconfirmed that IT.Com would not honor its guarantee to Plaintiff with regard to stock options, and did not pay Plaintiff all wages earned for work performed; rather, on January 31, 2012, the next scheduled pay date, Defendants only paid Plaintiff his pro-rated base salary through January 12, 2012.

40.     On about January 25, 2012, Defendants represented to Plaintiff that Defendants would not pay Plaintiff his wages that were due and owing unless Plaintiff agreed to sign a full release of all known and unknown claims and causes of action against IT.Com.  Plaintiff did not sign this document.

41.     At the time of Plaintiff's termination, Defendants failed and refused to pay Plaintiff his 10% commission for "data sales" on Invoice Name: "PG&E Invoice # PGE_SanBruno 12.5.11" in the amount of $28,577.34.

7

42.     At the time of Plaintiff's termination, Defendants failed and refused to pay Plaintiff his 10% commission for "data sales" on Invoice Name:  "PG&E Invoice # PGE_SanBruno 12.31.11" in the amount of $7,656.24.

43.     At the time of Plaintiff's termination, Defendants failed and refused to pay Plaintiff his 10% commission on "data sales" for 47 GB of data received and loaded prior to termination (IT.Com is in the possession of the Invoice Name) in the amount of $2,820.00.

44.     At the time of Plaintiff's termination, Defendants failed and refused to pay Plaintiff his balance on the commissions for PG&E invoices between 2/17/2011 - 8/23/2011 that IT.Com had underpaid Plaintiff by 1% due to miscalculation by IT.Com.  As a consequence, Plaintiff is owed unpaid commissions in the amount of $14,386.97.

45.     At the time of Plaintiff's termination, Defendants refused to pay Plaintiff his 35% commission due for Plaintiff's fixed price review project on Invoice "RS 7.28.10" in the amount of $7,583.78.

46.     At the time of Plaintiff's termination, Defendants refused to pay Plaintiff wages for fourteen (14) hours of production work on Invoice # PGE_SanBruno 12.31.11 in the amount of $2,100.00.

47.     At the time of Plaintiff's termination, Defendants refused to pay Plaintiff his earned 10% commissions on "data sales" for sales related to data hosting.  By and through Plaintiff's efforts, IT.Com entered into service agreements with Caterpillar, PG&E, Kohn Swift, and Pershing Square, each of whom pay between $4.17 to $50.00 per gigabyte per month to IT.Com for data hosted.  As of Plaintiff's termination date, IT.Com was hosting several thousand gigabytes of data that are subject to hosting fees.  All sales work had been completed by Plaintiff.

48.     The amount of hosting fees due on data received by IT.Com during Plaintiff's employment tenure are readily calculable from records in IT.Com's data storage records.

49.     The estimated hosting fees to IT.Com which are subject to 10% commission due to Plaintiff are as follows: $2,500.00 month for Pershing Square; $12,500.00 month for Kohn Swift; $16,000.00 per month for PG&E; and $1,250.00 per month for Caterpillar.

50.     In addition to the commissions for data hosting set forth above, Plaintiff is and continues to be owed 10% commissions on data received *after* Plaintiff's termination as the only sales work that Plaintiff was required to do in order to earn commissions was to deliver a signed, matter-specific service agreement, a task Plaintiff has already performed and which continues to generate revenue to IT.Com for which Plaintiff continues to be owed commissions from Defendants pursuant to his compensation plan.

51.     As set forth above, Plaintiff was paid his regular salary for all hours worked each week including overtime hours worked each week in excess of forty (40).

52.     As detailed above, Plaintiff did not perform work that is exempt from payment of overtime wages in the amount of one-and-one-half (1½) times Plaintiff's regular rate of pay for hours worked each week in excess of forty (40) as required by Federal and District of Columbia law.

53.     Throughout Plaintiff's employment, Plaintiff regularly and customarily worked about fifty (50) or more hours per week.

54.     Throughout Plaintiff's employment, Defendants had knowledge and suffered or permitted Plaintiff to regularly and customarily work about fifty (50) or more hours per week.

55.     According to 29 C.F.R. §778.112, where employees are paid a lump sum, the week's compensation must be converted to a "regular rate," equal to the total wages paid for the

9

week divided by the total hours actually worked.

56.     Applying the calculation method as set forth in the CFR, Plaintiff's regular rate of pay while in Defendants' employ was equal to $32.05 per hour ($100,000.00 per year / 52 weeks per year = $1,923.08 per week / 50 hours per week = $38.46 per hour).

57.     For each hour that Plaintiff worked each week in excess of forty (40), Plaintiff is owed his unpaid "half time" wages in the amount of $16.02 ($38.46 / 2 = $19.23 per hour) per overtime hour worked.

58.     As set forth above, each week Plaintiff worked approximately fifty (50) hours per week.  Accordingly, each week Plaintiff worked, Plaintiff is owed unpaid overtime wages in the amount of $192.30 ($19.23 per overtime hour * 10 overtime hours per week = $192.30 per week).

59.     Over the course of Plaintiff's employment period (approximately 123 weeks), Plaintiff earned and is owed unpaid overtime wages in the amount of $23,652.9 ($192.30 per week * 123 weeks = $23,652.90).

60.     Defendants' failure to pay Plaintiff overtime wages and commissions as required by law was willful and intentional and was not in good faith.

## CAUSES OF ACTION

### COUNT I
### Violation of Federal Fair Labor Standards Act
### (Overtime)

61.     Plaintiff re-alleges and reasserts each and every allegation set forth in Paragraphs 1-60 above, as if each were set forth herein.

62.     The FLSA mandates that an employer must pay non-exempt employees overtime wages in the amount of one-and-one-half (1½) times the employee's regular rate of pay for all

overtime hours worked each week in excess of forty (40).

63.    At all times, Plaintiff was a non-exempt "employee" covered by the FLSA, 29 U.S.C. § 207(a)(1), and both Defendants were Plaintiff's "employers" under FLSA, 29 U.S.C. § 207(a)(2).

64.    Defendants, as Plaintiff's employers, were obligated to compensate Plaintiff at the overtime rate of one-and-one-half (1½) times Plaintiff's regular rate of pay for all hours worked per week in excess of forty (40).

65.    As set forth above, while in Defendants' employ, Plaintiff worked many overtime hours each week in excess of forty (40).

66.    As set forth above, Defendants failed to compensate Plaintiff properly, and as required by the FLSA, for all overtime hours worked each week in excess of forty (40).

67.    Defendants' failure to pay Plaintiff as required by the FLSA was willful and intentional, and was not in good faith.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiff under Count I for all unpaid overtime wages in such amounts as are proven at trial, plus an equal amount in liquidated damages, interest (both pre- and post- judgment), reasonable attorney's fees, the costs of this action, and any other and further relief this Court or a jury deems appropriate.

## COUNT II
### Violation of D.C. Minimum Wage Act Revision Act of 1992
### (Overtime)

68.    Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1-67 above, as if each were set forth herein.

69.    Plaintiff was Defendants' non-exempt "employee," and both Defendants were Plaintiff's "employers" within the meaning of the DCMWA, D.C. Code §§ 32-1001 *et seq.*

70.     Defendants, as Plaintiff's employer under the DCMWA, were obligated to compensate Plaintiff at the overtime rate of one-and-one-half (1½) times Plaintiff's regular rate of pay for all hours worked per week in excess of forty (40).

71.     As set forth above, while in Defendants' employ, Plaintiff worked many overtime hours each week in excess of forty (40).

72.     As set forth above, Defendants failed to compensate Plaintiff properly, and as required by the DCMWA, for all overtime hours worked each week in excess of forty (40).

73.     Defendants' failure and refusal to pay Plaintiff as required by the FLSA was willful and intentional, and was not in good faith.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiff, under Count II, for all unpaid wages in such an amount to be proven at trial, plus liquidated damages in an equal amount, interest (both pre- and post-judgment), attorney's fees, costs, and any other and further relief this Court or a jury deems appropriate.

## COUNT III
### Violation of D.C. Wage Payment and Wage Collection Act

74.     Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1-73 above, as if each were set forth herein.

75.     Plaintiff was a non-exempt "employee" and both Defendants were Plaintiff's "employers" within the meaning of the DCWPA, D.C. Code §§ 32-1301 *et seq.*

76.     Under the DCWPA § 32-1302, Defendants, as Plaintiff's employers, were obligated to pay Plaintiff all wages due for work that Plaintiff performed.

76.     As set forth above, Plaintiff performed work duties sufficient to earn commission wages for which Defendants have failed and refused to pay Plaintiff commission wages.

77.     Defendants owe Plaintiffs back wages and commission in the amounts set forth above under the DCWPA.

78.     Defendants' failure and refusal to pay wages due as required by the DCWPA was willful and intentional, was not the result of any *bona fide* dispute between Plaintiff and Defendants, and was not in good faith.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiff under Count III, for all unpaid wages in such amounts to be proven at trial, plus liquidated damages in an equal amount, interest (both pre- and post-judgment), attorney's fees, costs, and any other and further relief this Court or a jury deems appropriate.

**COUNT IV**
**BREACH OF EMPLOYMENT CONTRACT**

79.     Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1-78 above, as if each were set forth herein.

80.     As set forth more fully above, IT.Com, by and through Cordover, promised to compensate Plaintiff by way of a salary and an agreed-upon commission and compensation schedule.

81.     As set forth above, Plaintiff fully performed, in a workmanlike manner, all duties necessary to earn all salary, wages, and commissions due and owing.

82.     As set forth more fully above, IT.Com materially breached Plaintiff's employment contract by failing to pay Plaintiff all salary, wages, and commissions due and owing to Plaintiff.

83.     As a consequence of IT.Com's material breach of Plaintiff's employment contract, Plaintiff has suffered damages for which IT.Com is liable.

WHEREFORE, Plaintiff prays that he be awarded judgment against IT.Com for breach of contract in such amounts as are proven at trial, plus interest (both pre- and post-judgment), the costs of this action, and any other and further relief this Court or a jury deems appropriate.

**COUNT V**
**QUANTUM MERUIT**

84.     Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1-83 above, as if each were set forth herein.

85.     In the alternative to Count IV, should it be determined that Plaintiff did not have an employment contract with IT.Com, Plaintiff performed services for IT.Com under circumstances in which Plaintiff and IT.Com reasonably expected that Plaintiff would be compensated in the amount of commissions, salary, and wages for services rendered.

86.     It would be unfair and inequitable for IT.Com to receive the value of Plaintiff's services without paying Plaintiff full and reasonable compensation therefor.

87.     IT.Com has failed to pay Plaintiff the full and reasonable value of commissions, salary, and wages for services rendered.

WHEREFORE, Plaintiff prays that he be awarded judgment on Count V of his Complaint against IT.Com in such an amount as is proven at trial, plus interest (both pre- and post-judgment), the costs of this action, and any other and further relief this Court or a jury deems appropriate.

**COUNT VI**
**BREACH OF CONTRACT**
**(Stock Options)**

88.     Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1-87 above, as if each were set forth herein.

89.     As set forth more fully above, IT.Com, by and through its CEO Cordover, promised Plaintiff that in exchange for Plaintiff agreeing to become employed by IT.Com that Plaintiff would receive stock options, vesting over three years, but fully vesting on change of control, for 3% of the total outstanding shares of IT.Com, with the option having a strike price which values the company at $15,000,000.00.

90.     As set forth above, Plaintiff fully performed all conditions precedent such that the stock options as promised by IT.Com, and relied upon by Plaintiff, were due and owing to Plaintiff.

91.     As set forth more fully above, IT.Com materially breached Plaintiff's stock option contract by repudiating Plaintiff's entitlement to the stock options and failing to make the stock options available to Plaintiff as promised.

92.     As a consequence of the foregoing, IT.Com has materially breached Plaintiff's stock option contract and Plaintiff has suffered damages arising there from for which IT.Com is liable.

WHEREFORE, Plaintiff prays that he be awarded judgment against IT.Com for breach of contract in such amounts as are proven at trial, plus interest (both pre- and post-judgment), the costs of this action, and any other and further relief this Court or a jury deems appropriate.

## COUNT VII
## INTENTIONAL MISREPRESENTATION
### (Stock Options)

93.     Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1-92 above, as if each were set forth herein.

94.     As set forth above in more detail, IT.Com, by and through its CEO Cordover, made false representations to Plaintiff, *to wit*, promising Plaintiff that he would be entitled to and have the right to receive stock options, vesting over three years, but fully vesting on change of control, for 3% of the total outstanding shares of IT.Com, with the option having a strike price which values the company at $15,000,000.00.

95.     IT.Com knew that such representations were false when IT.Com made these representations.

96.     The representations made by IT.Com relating to Plaintiff's right and entitlement to stock options were made by IT.Com to Plaintiff for the purpose of inducing Plaintiff to leave other employment and work for IT.Com and/or continue providing valuable services to IT.Com.

97.     Plaintiff justifiably relied upon IT.Com's misrepresentations as to Plaintiff's right to receive stock options and suffered damages as a direct and proximate result thereon.

98.     IT.Com's misrepresentations caused Plaintiff to forego alternative business opportunities and continue working for IT.Com for considerably longer than he would have had the misrepresentations not been made.

99.     IT.Com willfully made the misrepresentations to Plaintiff with actual malice.

WHEREFORE, Plaintiff demands judgment against IT.Com on Count VII, for compensatory damages in the amount of One Million Dollars ($1,000,000.00), punitive damages in the amount of Four Million Dollars ($4,000,000.00), plus interest (both pre- and post-judgment), the costs of this action, and any other and further relief this Court or a jury deems appropriate.

## COUNT VIII
## NEGLIGENT MISREPRESENTATION
### (Stock Options)

100.    Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1-99 above, as if each were set forth herein.

101.    IT.Com owed Plaintiff, as IT.Com's employee, a duty of care.

102.    IT.Com, despite its duty of care, negligently made false representations to Plaintiff, *to wit*, promising Plaintiff that Plaintiff would be entitled to and would enjoy the right to receive certain stock options as set forth above.

103.    IT.Com's representations to Plaintiff were intended to induce Plaintiff to enter into and/or remain in IT.Com's employ.

104.    As a result of IT.Com's representations, Plaintiff was enticed and persuaded to accept employment with IT.Com and/or continue in IT.Com's employ.

105.    IT.Com had knowledge that Plaintiff would rely on the false representations regarding Plaintiff's right and entitlement to stock options in choosing whether to enter into and/or remain in IT.Com's employ.

106.    Plaintiff was justified in relying upon IT.Com's false representations.

107.    In reliance upon IT.Com's false representations, Plaintiff forewent alternative employment options and entered into and/or continued in IT.Com's employ.

108.    Plaintiff has been damaged by IT.Com's false representations and his reliance thereon.  Such damage was proximately caused by IT.Com's negligence.

WHEREFORE, Plaintiff demands judgment against IT.Com on Count VIII for compensatory damages in the amount of One Million Dollars ($1,000,000.00), plus interest (both pre- and post-judgment), the costs of this action, and any other and further relief this Court or a jury deems appropriate.

**COUNT IX**
**BREACH OF CONTRACT**
**(Equity Rights in Spinoff Company)**

109.    Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1-108 above, as if each were set forth herein.

110.    As set forth more fully above, IT.Com, by and through its CEO Cordover, promised Plaintiff that in exchange for Plaintiff agreeing to become employed by IT.Com and remain in IT.Com's employ that Plaintiff would receive and would be entitled to the right to run IT.Com's services business spinoff, which would initially take the form of a fixed price review offering and would also include 'data only' eDiscovery services, and that Plaintiff was entitled to the right to a 35% equity interest in IT.Com's business spinoff.

111.    As set forth above, Plaintiff fully performed all conditions precedent such that the equity interest in IT.Com's spinoff as promised by IT.Com, and relied upon by Plaintiff, became due and owing as an earned right belonging to Plaintiff.

112.    As set forth more fully above, IT.Com materially breached Plaintiff's contract for equity rights in the spinoff company by repudiating Plaintiff's entitlement to equity rights and failing to make the equity rights available to Plaintiff as promised.

113.    As a consequence of the foregoing, IT.Com has materially breached Plaintiff's equity rights contract and Plaintiff has suffered damages arising there from for which IT.Com is liable.

WHEREFORE, Plaintiff prays that he be awarded judgment against IT.Com in Count IX for breach of contract in such amounts as are proven at trial, plus interest (both pre- and post-judgment), the costs of this action, and any other and further relief this Court or a jury deems appropriate.

## COUNT X
### INTENTIONAL MISREPRESENTATION
### (Equity Rights in Spinoff Company)

114.   Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1-113 above, as if each were set forth herein.

115.   As set forth above in more detail, IT.Com, by and through its CEO Cordover, made false representations to Plaintiff, *to wit*, promising Plaintiff that he would receive and be entitled to enjoy the right to receive and run IT.Com's services business spinoff, which would initially take the form of a fixed price review offering and would also include 'data only' eDiscovery services, and that Plaintiff was entitled to the right to a 35% equity interest in IT.Com's business spinoff.

116.   IT.Com knew that such representations were false when IT.Com made these representations.

117.   The representations made by IT.Com relating to Plaintiff's right to an equity interest in the spinoff business were made by IT.Com to Plaintiff for the purpose of inducing Plaintiff to leave other employment and work for IT.Com and/or continue providing valuable services to IT.Com.

118.   Plaintiff justifiably relied upon IT.Com's misrepresentations as to Plaintiff's right to an equity interest in the spinoff business and suffered damages as a direct and proximate result thereon.

119.     IT.Com's misrepresentations caused Plaintiff to forego alternative business opportunities and continue working for IT.Com for considerably longer than he would have had the misrepresentations not been made.

120.     IT.Com willfully made the misrepresentations to Plaintiff with actual malice.

WHEREFORE, Plaintiff demands judgment against IT.Com on Count X, for compensatory damages in the amount of One Million Dollars ($1,000,000.00), punitive damages in the amount of Four Million Dollars ($4,000,000.00), plus interest (both pre- and post-judgment), the costs of this action, and any other and further relief this Court or a jury deems appropriate.

**COUNT XI**
**NEGLIGENT MISREPRESENTATION**
**(Equity Rights in Spinoff Company)**

121.     Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1-120 above, as if each were set forth herein.

122.     IT.Com owed Plaintiff, as IT.Com's employee, a duty of care.

123.     IT.Com, despite its duty of care, negligently made false representations to Plaintiff, *to wit*, promising Plaintiff that Plaintiff would be entitled to and enjoyed the right to an equity interest in IT.Com's spinoff business as set forth above.

124.     IT.Com's representations to Plaintiff were intended to induce Plaintiff to enter into and/or remain in IT.Com's employ.

125.     As a result of IT.Com's representations, Plaintiff was enticed and persuaded to accept employment with IT.Com and/or continue in IT.Com's employ.

126.    IT.Com had knowledge that Plaintiff would rely on the false representations regarding Plaintiff's right and entitlement to an equity interest in IT.Com's spinoff business in choosing whether to enter into and/or remain in IT.Com's employ.

127.    Plaintiff was justified in relying upon IT.Com's false representations.

128.    In reliance upon IT.Com's false representations, Plaintiff forewent alternative employment options and entered into and/or continued in IT.Com's employ.

129.    Plaintiff has been damaged by IT.Com's false representations and his reliance thereon.  Such damage was proximately caused by IT.Com's negligence.

WHEREFORE, Plaintiff demands judgment against IT.Com on Count XI for compensatory damages in the amount of One Million Dollars ($1,000,000.00), plus interest (both pre- and post-judgment), the costs of this action, and any other and further relief this Court or a jury deems appropriate.

**COUNT XII**
**UNJUST ENRICHMENT**
**(Equity Rights in Spinoff Company)**

130.    Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1-129 above, as if each were set forth herein.

131.    As set forth above in more detail, IT.Com, by and through its CEO Cordover (individually and in the capacity as an officer of IT.Com), made certain representations to Plaintiff, *to wit*, promising Plaintiff that he would receive and be entitled to enjoy the right to receive and run IT.Com's services business spinoff, which would initially take the form of a fixed price review offering and would also include 'data only' eDiscovery services, and that Plaintiff was entitled to the right to a 35% equity interest in IT.Com's business spinoff.

132.   As a result of Cordover and IT.Com's representations, Plaintiff was enticed and persuaded to accept employment with IT.Com and/or continue in IT.Com's employ, and to pursue activities designed to increase the corporate value of the services business spinoff.

133.   The corporate value of a company such as IT.Com's is generally determined by means of multiplying its sales or bottom-line profit in the trailing twelve months (TTM) by an industry-specific 'multiple'.

134.   In the industries in which IT.Com engaged, that multiple was in the range of six to ten times profits in the TTM period.

135.   Plaintiff's successful sales efforts increased IT.Com's bottom-line TTM profit by approximately Two Million Dollars ($2,000,000).

136.   Using the industry standard multiple for guidance, the corporate value of IT.Com's business increased by between Twelve and Twenty Million Dollars, as a direct result of Plaintiff's efforts ($2,000,000 in increased bottom-line profit multiplied by a factor of six to ten).

137.   Revenues from the electronic discovery services business were to be associated with the services business spinoff, in which Plaintiff was to receive a 35% equity interest.

138.   Accordingly, the increase in value of between Twelve Million Dollars ($12,000,000) to Twenty Million Dollars ($20,000,000) was to be associated with the services business spinoff.

139.   IT.Com and Cordover (individually and in his capacity as an officer for IT.Com) refused to execute the services business spinoff, thereby associating all of the increase in value of Twelve to Twenty Million Dollars with the parent company, IT.Com, and depriving Plaintiff of his 35% share thereof.

140.    It is unjust that IT.Com and its primary shareholder, Cordover, should enjoy and receive the full increase in corporate value of his stock in IT.com, of between Twelve to Twenty Million Dollars, 35% which was promised to, and earned by, Plaintiff.

141.    The value of Plaintiff's 35% equity share in the corporate value created is between $4,200,000 and $7,000,000 (35% of the increase in corporate value of between $12,000,000 and $20,000,000).

142.    In IT.Com's act of terminating Plaintiff, IT.Com's CEO, Cordover, as primary shareholder and beneficiary, avariciously attempted to appropriate for himself all of the value created by Plaintiff.

143.    It would be unfair and inequitable for Cordover to receive the benefit and value of Plaintiff's services, without paying Plaintiff full and reasonable compensation therefor.

144.    IT.Com and Cordover have failed to pay Plaintiff the full and reasonable value of Plaintiff's 35% equity share in the corporate value created, which amounts to between $4,200,000 and $7,000,000.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, on Count XII, in such an amount as is proven at trial, plus interest (both pre- and post-judgment), the costs of this action, and any other and further relief this Court or a jury deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Philip B. Zipin, Bar No. 367562
Gregg C. Greenberg, Bar No. 17291
The Zipin Law Firm, LLC
8403 Colesville Rd., Suite 610
Silver Spring, MD 20910
Ph: (301) 587-9373
Fax (301) 587-9397
Email:  pzipin@zipinlaw.com
           ggreenberg@zipinlaw.com

*Counsel for Plaintiff*